No. 37,949

.Clarence Elmer Lowe, *Appellee,* v. Arthur A. Herrick, State Director of Alcoholic Beverage Control, *Appellant.*

(223 P. 2d 745)

Opinion filed November 10, 1950.

*Clay C. Carper,* Topeka, argued the cause, and was on the briefs for the appellant.

*Grey Dresie* and *Carl A. Bell, Jr.,* both of Wichita, and attorneys for applicant below, and *James W. Porter,* Topeka, representing the State Alcoholic Beverage Control Board of Review, filed briefs as *amici curiae.*

The opinion of the court was delivered by

Wertz, J.: This is an appeal by the state director of Alcoholic Beverage Control from a judgment of the district court of Sedgwick county reversing an order of the State Alcoholic Beverage Control Board of Review which affirmed appellant director's order refusing a retail liquor dealer's license to one Clarence Lowe, and ordering issuance of said license. Briefs were filed by the state Board of Review and by attorneys for applicant Lowe as *amici curiae.*

The undisputed facts involved are as follows: Appellee Lowe, a resident of Wichita, filed an application for a retail liquor license with the director of Alcoholic Beverage Control in accordance with the provisions of chapter 242, laws of 1949, known as the Liquor Control Act. At his hearing held pursuant thereto, evidence was

introduced showing two arrests on charges of gambling in October and November, 1934, in each of which Lowe forfeited bonds for appearance on the charges, and one arrest and charge of possession of gambling equipment in 1937, to which he pleaded guilty. Because of this record of law violations, the director—appellant here—denied Lowe's application for a license on the ground that the offenses of gambling and possession of gambling equipment were offenses "opposed to decency and morality" which disqualified applicant under section 27 (1) (g) of the Kansas Liquor Control Act (ch. 242, laws 1949). That section provides:

"No license of any kind shall be issued to a person who has been convicted of or has pleaded guilty to being the proprietor of a gambling house, or' of pandering or *other crime or misdemeanor opposed to decency and morality* or shall have forfeited his bond to appear in court to answer charges for any such violation." (Emphasis supplied.)

From appellant director's ruling, Lowe appealed to the Board of Review (sec. 37 of the Act) which, after a hearing, upheld the director. Lowe then appealed to the district court of Sedgwick county (sec. 39) and the district court held that the offenses committed were not within the purview and intent of the Kansas Liquor Control Act, and ordered the director to issue to appellee Lowe the license applied for. Appeal to the supreme court is made in accordance with the provisions of section 39 of the Act (ch. 242, laws of 1949).

At the outset it must be remembered that the power of the legislature to fix the qualifications of applicants for liquor licenses is not here in question; it is in fact admitted that it has that power and authority. As heretofore indicated, the legislature has prescribed that no applicant for a retail liquor license shall be entitled thereto if he has been convicted of or has pleaded guilty to being the proprietor of a gambling house or of pandering or other crime or misdemeanor opposed to decency and morality, or shall have forfeited his bond to appear in court to answer charges for such violation.

The sole question involved in this appeal is: Does the conviction of, the pleading guilty to, or the forfeiture of a bond for appearance to answer charges of gambling or the possession of gambling equipment constitute a crime or misdemeanor opposed to decency and morality as the same is used and employed under the provisions of section 27 (1) (g), ch. 242, laws of 1949, known as the Kansas Liquor Control Act?

The court, in considering the provisions of sec. 27 (1) (g), is of the opinion that the words "*or* other crime or misdemeanor opposed to decency and morality" are not limited to the two offenses enumerated, *i. e.*, "the proprietor of a gambling house" or "pandering." In fact, the words "proprietor of a gambling house" might well be interpreted to include either the offense of gambling or possession of gambling equipment, placing them within the prohibition of the statute.

Whether gambling, in the various phases in which it is practiced, is demoralizing in its tendencies and therefore an evil is no longer an open question. It has been generally held that gambling is injurious to the morals and welfare of the people (24 Am. Jur. 399-400), and our state is no exception to the well established general rule. Since the days of territorial statehood, gambling houses and gambling devices have been prohibited (G. S. 1935, 21-915). Since 1895 it has been unlawful for any person to permit gambling on premises he owned or occupied (G. S. 1935, 21-917); gambling places have been declared a nuisance, subject to injunction proceedings (G. S. 1935, 21-918); it has been declared unlawful for any person to bet any money or property at or upon any gaming table, bank or gaming device or upon the result of any game of skill or chance, whether with dice, cards or other thing (G. S. 1935, 21-924). These and other forms of gambling enumerated in our statutes have been prohibited in this state since the earliest days of our statehood, and such statutes are presently in force and effect.

This court has said:

"What constitutes good moral character is not easy to determine or define, but upon general principles one who does that which is forbidden and penalized by the law of the land does not possess the character and fitness required by the statute. . . . (*In re Spencer,* 22 Fed. Cas. 921; 4 Words & Phrases, 3124; 2 Words & Phrases, 2d series, 759)." *Crabb v. Board of Dental Examiners,* 118 Kan. 513, 516, 235 Pac. 829, 269 U. S. 580, 70 L. Ed. 422, 46 S. C. 105; 54 A. L. R. 1519n.

See also *State v. Bieber,* 121 Kan. 536, 247 Pac. 875, 48 A. L. R. 252.

Because of the close personal contact and close relationship which necessarily exists between those engaged in the sale of liquor and the general public, the legislature in setting up rules and regulations to govern the traffic in liquor—long prohibited in this state—realized and gave effect to the importance of selecting only those applicants with unblemished character and possessed of a high standard of morals and decency.

It follows that the admitted violations of law by appellee constituted such conduct within the meaning of the statute under consideration as to be opposed to public morals and decency. What constitutes decency and good moral c h a r a c t e r may vary in some respects at different times and places. It may be said with good reason that a person who violates the law thereby manifests in a greater or lesser degree that he is not well disposed to the good order and well being of society, and therefore does not meet the standard contemplated by the legislature. It cannot be said that a person who has twice been arrested and has forfeited his bond for appearance on the charge of gambling and who has pleaded guilty to a charge of possession of gambling equipment possesses the required standards of morals and decency to permit his being licensed to sell liquor within the meaning of the statute under consideration.

In view of what has been said, the judgment of the district court is reversed and the case remanded with directions to enter judgment for appellant.